UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL GENE POWERS,<br><br>            Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>            Defendant. | Case No. 1:15-cv-00077-EPG<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.    INTRODUCTION**

Plaintiff Randall Gene Powers ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Erica P. Grosjean, United States Magistrate Judge.[1] Upon a review of the administrative record, the Court finds the ALJ's decision is not free of clear legal error and supported by substantial evidence.  The case is thus remanded to the agency for further proceedings.

///

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 9 and 17).

1

## II. BACKGROUND AND PRIOR PROCEEDINGS

Plaintiff filed an application for DIB in December 2010, alleging a disability onset date of August 14, 2010. His application was denied initially in April 2011 and on reconsideration in September 2011. AR 115; 121.[2] A hearing was conducted before Administrative Law Judge Jeffrey Hatfield ("ALJ") on September 26, 2012 and a second hearing occurred on June 26, 2013. AR 36-57; 58-89. On July 11, 2013, the ALJ issued a decision finding that Plaintiff was not disabled. AR 17-30. Plaintiff filed an appeal of the decision with the Appeals Council. AR 12-16. The Appeals Council denied his appeal, rendering the order the final decision of the Commissioner. AR 1-7.

Plaintiff now challenges that decision, arguing that the ALJ failed to articulate clear and convincing reasons for rejecting Plaintiff's testimony. (Doc. 14, pgs. 8-16). Plaintiff argues that the Court should reverse and award benefits to Plaintiff. In the alternative, Plaintiff contends, the case should be remanded for further administrative proceedings. In opposition, Defendant argues that the ALJ provided valid reasons for finding Plaintiff not entirely credible, which were supported by substantial evidence. (Doc. 22, pgs. 6-15).

### A. Plaintiff's Testimony

Two hearings were held in Long Beach, California. Plaintiff appeared via video from Palmdale and was represented by his attorney Brian Reed at both hearings. AR 36; 58. Plaintiff and a vocational expert, Ronald Hatakeyama, testified at the first hearing. AR 38-57. Plaintiff and a vocational expert, Howard Goldsbarb, testified at the second hearing. AR 38. Plaintiff was 49 years old at the time of the first hearing and 50 years old at the time of the second hearing. AR 41; 62. He lives with his girlfriend and 11-year-old daughter. AR 64. He has a high school diploma. AR 63. Plaintiff last worked in June 2010 at Harbor Freight Tools as a general manager. AR 64-65.

At the September 2012 hearing, Plaintiff testified that he did not have health care. His primary source for prescriptions was TZI Buddhist Monastery, a health care provider that came to his town every quarter. AR 67. He had recently found a doctor at the Antelope Valley Clinic he

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

planned to begin seeing. AR 67. Plaintiff testified that arthritis flare-ups make it impossible to maintain employment as he would be unable to work 3-4 days at a time 2-3 times per month. AR 68-69. He testified of arthritis primarily in his knees, ankles, and wrists, which results in periodic flare-ups that make it difficult to stand and walk. AR 67-68. When the swelling gets bad, he takes Prednisone and uses crutches until the swelling goes down. AR 67-68. Plaintiff was initially diagnosed with arthritis in 2006 in his upper extremities. AR 71; 73. It is difficult for him to close his hands into a fist and "it feels like [a] balloon pushing back out." AR 73. He reports that his hands are swollen 60-80% of the time, which makes it difficult to pick things up and exert pressure. AR 73-74. He suffers pain and swelling in his knee about 80% of the time with flare-ups 2-3 times per month. AR 74-75. Plaintiff reports that his ankles are swollen 90% of the time, which causes pain when he walks. AR 75. He also has pain in his hip. AR 75-76. He cannot sit for more than one hour due to numbness in his leg. AR 79. He takes nitrates due to tightness in his chest. AR 68. He has shortness of breath when walking 5-20 paces, which he attributes in part to his weight, a circulatory problem, and a possible back problem. AR 68.

Plaintiff can bathe himself without assistance, get dressed, prepare simple meals, and do simple chores such as washing dishes, but these tasks take much longer than they used to and require periodic rest. AR 69-70; 77. He can go grocery shopping using an electric cart, but it takes him about four hours and he has to lie down afterward. AR 69-70. He wakes up every two hours at night to use the restroom and increase circulation in his legs. AR 77-78. He takes about an hour long nap in the afternoon. AR 78.

In May 2012, Plaintiff suffered a mild heart attack. AR 72. His fatigue has worsened since the heart attack. AR 76. Plaintiff takes medication to treat high blood pressure and cholesterol. AR 72-73. He still has hypertension, despite taking medication. AR 72. He has taken Methotrexate to treat his arthritis since 2006, which weakens his immune system and requires that he be screened for kidney and liver damage every two months. AR 77. Plaintiff testified he is unable to perform his past work because he cannot walk, stand, or sit six hours out of an eight-hour day. AR 78.

At the supplemental hearing in June 2013, Plaintiff testified he had stopped driving more

than about a mile as he is unable to put his foot down hard on the pedal. AR 42. He reported his flare-ups have increased to four or five times a month causing him to use his crutches more. AR 44. He was recently approved for Medi-Cal and has been treated more frequently, particularly at the emergency room and Antelope Valley Hospital. AR 41; 44. He reports going to the emergency room about twice a month due to swelling in his ankles, knees, both wrists, and fingers that makes it impossible to function, walk, or sleep. AR 45-46. He reported his pain being 10 out of 10, which makes it difficult to concentrate, walk, and grip things with his hands. AR 46-48. He was treated with pain medication, which makes him sleepy, and steroids. AR 45-46.

### B. Medical Record

The entire medical record was reviewed by the Court. However, only evidence that relates to the issues raised in this appeal is summarized below.

#### *i*. Medical History

Plaintiff has a history of rheumatoid arthritis. *See e.g*., AR 432. He was able to continue working while on Methotrexate. AR 432. However, Plaintiff could no longer afford Methotrexate to treat the arthritis after he lost his job. AR 432. Plaintiff takes prednisone when his arthritis flares up. AR 432.

#### *ii. Consultative Examiner, Dean Chiang, M.D.*

Plaintiff had a comprehensive internal medicine evaluation by Dr. Chiang on April 9, 2011. AR 330-334. Dr. Chiang observed Plaintiff to be a well-developed, well-nourished individual who appears to be muscular. AR 331. Plaintiff walked on his own volition with a normal gait, was able to sit comfortably, take his shoes on and off, retie his shoelaces, and get on and off the examination table by himself. AR 331. Examination of his joints revealed no signs of active synovitis. AR 331.

Dr. Chiang diagnosed Plaintiff as having rheumatoid arthritis and chronic back pain with intermittent sciatica. AR 333. Dr. Chiang opined that Plaintiff would be able to stand and walk for up to four hours in an eight-hour day with no sitting limitations as long as appropriate breaks were given. AR 333. He further opined Plaintiff can lift and carry without restrictions. However, when Plaintiff's pain flares, he would be limited to lifting and carrying 10 pounds and may need

an assistive device for ambulating. AR 333-334. He limited Plaintiff to occasional postural activities and opined he may have some manipulative limitations. AR 334.

### *iii*. *Consultative Examiner, Jay Dhiman, M.D.*

Plaintiff had a complete internal medicine evaluation by Dr. Dhiman on January 16, 2013. AR 495-501. Plaintiff was well-developed, well-nourished, overweight, and did not seem to be in any pain. His station and gait were normal. AR 497. He is right hand dominant with 20/20/20 grip strength in his right hand and 15/15/15 in his left. AR 497. His neck was supple without adenopathy or jugular venous distention. The range of motion of the neck on flexion was 0-45 degrees, extension 0-30 degrees, lateral flexion 0-30 degrees, and lateral rotation 0-60 degrees. AR 498. His chest was not tender, his breath sounds were symmetric, and he had regular heart rate and rhythm. AR 498. There was no tenderness to palpation in the midline or paraspinal areas, negative straight leg raising at 90 degrees, and full range of motion of the back within normal limits. AR 498. He had mild generalized tenderness of the wrists without any swelling. AR 499. He had tenderness of the fingers with some swelling. AR 499. He had normal range of motion in his hands. AR 499. His range of motion in hips and knees was grossly normal bilaterally. AR 499. There was no swelling in his knees. AR 500. His knees were without effusion, had tenderness in the lateral and medial joint lines without any crepitation, and no mediolateral or anteroposterior instability. AR 499. His range of motion in ankles was grossly normal bilaterally with trace edema without swelling or tenderness. AR 499. He also had normal range of motion in his feet. AR 499. He was able to walk in tandem with mild instability and on the heels with slight instability. He was unable to walk on his toes. AR 499. He was able to squat down only 25% and rise from it. AR 499.

Dr. Dhiman's impressions were that Plaintiff had rheumatoid arthritis that was suboptimally treated because he is not taking medication to stop the progression of rheumatoid arthritis and only takes prednisone for flare-ups. AR 500. Dr. Dhiman opined that Plaintiff's complaints of morning stiffness were consistent with rheumatoid arthritis. AR 500. He further opined that Plaintiff's knee and ankle pain may also be from being overweight.

Dr. Dhiman opined Plaintiff should be able to stand and walk for six hours in an eight-

hour day with no limitations on sitting and can lift 50 pounds occasionally and 25 pound frequently. AR 500. Plaintiff can perform feeling, fingering, grasping, and overhead reaching frequently; bending, stopping, and crouching frequently; and has no visual, communicative, or environmental limitations. AR 500.

### *iv. State Agency Medical Evaluators*

Dr. Pan, M.D. and Dr. Christian, M.D. both reviewed Plaintiff's medical record and opined that Plaintiff is able to lift or carry 25 pounds frequently and 50 pounds occasionally; sit, stand and walk about six hours in an eight-hour workday; and needs to avoid concentrated exposure to extreme cold. AR 97-98; 110. Both evaluators found Plaintiff to be partially credible. AR 97, 109.

## III. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1502(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 404.1502(a)(4).  The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527.

Specifically, the ALJ is required to determine:  (1) whether a claimant engaged in

substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his or her past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 C.F.R. §§ 404.1520(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 20.  In particular, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act though December 31, 2014. AR 22. Further, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 14, 2010, the alleged onset date. AR 22.  The ALJ identified rheumatoid arthritis, coronary artery disease, obesity, hypertension, and sciatica/degenerative disc disease of the lumbar spine as severe impairments. AR 22.  The ALJ also determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part § 404, Subpart P, Appendix 1.  AR 22.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically:

> [Plaintiff] is able to lift or carry 10 lbs. frequently and 20 lbs. occasionally, stand or walk about 4 hours in an 8-hour workday, but needs to get off his feet every 30 minutes and needs to use crutches 2-3 times a month due to flare-ups. He can sit about 6 hours in an 8-hour workday but every 30 minutes needs to reposition himself to relieve discomfort. He can occasionally climb stairs, but not ladders, ropes or scaffolds. He can occasionally balance, stoop and crouch. He is unable to kneel or crawl. He can occasionally reach overhead bilaterally and frequently perform gross handling and fine

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

fingering bilaterally. He needs to avoid even moderate exposure to dangerous moving machinery and unprotected heights.

AR 23.

Based on this RFC, the ALJ found that Plaintiff could not perform his past relevant work. AR 28. However, the ALJ found that because there were a significant number of other jobs in the national economy which Plaintiff could perform, he was not disabled. AR 29.

**IV. STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id*.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

**V.    DISCUSSION**

**A. The ALJ Improperly Discredited Plaintiff's Subjective Complaints.**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for finding his testimony not entirely credible. (Doc. 14.) When considering a claimant's credibility, a two-step analysis applies at the administrative level. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014).  First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id.*  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so.  *Id.;*

8

*Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").  Factors an ALJ may consider include:  1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, following consideration of the evidence and two in-person hearings, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not entirely credible."  AR 24.  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-82.

Because the ALJ did not find that Plaintiff was malingering, he was then required to provide clear and convincing reasons for rejecting Plaintiff's testimony.  *Brown–Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (as amended).  When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, general findings are insufficient; rather, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

Here the ALJ states Plaintiff's allegations are "not entirely credible for the reasons explained in this decision." AR 24. The ALJ then proceeds to summarize Plaintiff's medical record. AR 24-27. However, the ALJ fails to provide any specific reasons for discrediting Plaintiff's allegations.

The Commissioner asserts that the ALJ did provide valid reasons that were supported by substantial evidence for finding Plaintiff not entirely credible. (Doc. 22.) Specifically, the Commissioner contends the ALJ based his rejection on: (1) mild objective evidence; (2) routine conservative treatment received; (3) opinions of four assessing physicians; and, (4) relatively normal daily activities Plaintiff's girlfriend described. (Doc. 22.) The Commissioner is correct that these can, in some cases, constitute clear and convincing reasons. However, it is not evident in this instance that the ALJ actually based his decision on these reasons. A reviewing court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). The court is not entitled to ascribe a basis for an ALJ decision where the ALJ himself did not articulate that rationale. Nowhere in the ALJ's decision does he expressly provide any of these reasons for finding Plaintiff not credible.

Because this case will be remanded for further findings, the Court briefly reviews the Commissioner's purported reasons for finding Plaintiff not credible, but only to provide guidance on remand.

*Mild Objective Evidence*

The ALJ summarizes Plaintiff's testimony, medical records, the findings of the consultative examiners and state agency medical evaluators, and the third party function report. AR 23-28. After giving reasons for the weight accorded to each, the ALJ then makes a broad statement saying the RFC is supported. AR 28. Inconsistencies between the record and medical evidence may support a rejection of a claimant's credibility. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). However, "[i]n order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id.*, citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ did not articulate how the objective medical evidence discredits Plaintiff's testimony beyond summarizing the medical evidence and stating that the RFC "is

10

supported by clinical signs." AR 28. Such a non-specific statement, without more, is insufficient to discredit Plaintiff's testimony.

*Routine Conservative Treatment Received/Failure to Seek Treatment*

The ALJ is permitted to consider lack of medical treatment in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn,* 495 F.3d at 638, citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.1995). The ALJ mentions that Plaintiff's arthritis has been treated effectively with a combination of Methotrexate and predisone/steroids. AR 24. However, Plaintiff is unable to afford Methotrexate because of a lack of insurance. AR 71; 274.

Additionally, the ALJ does not articulate reasons for dismissing Plaintiff's complaints of inability to work 2-3 times per month during arthritis flare-ups. AR 68-69. Further, the ALJ does not address that both vocational experts testified that if a person were to regularly miss reporting to work two days a month, they would be unemployable.  AR 56; 85. Thus, Plaintiff's conservative treatment would be an inadequate reason to reject Plaintiff's testimony, had the ALJ offered it.

*Opinions of Four Assessing Physicians*

The ALJ summarizes the evaluations and findings of both consultative examiners, Dr. Chiang and Dr. Dhiman. AR 25-27. He also summarizes the RFC assessments of both reviewing state agency medical evaluators, Dr. Pan, M.D. and Dr. Christian, M.D. AR 27.  The ALJ states reasons for giving the state agency medical evaluators and consultative examiners substantial weight. AR 28. However, the ALJ does not articulate how these opinions discredit Plaintiff's testimony. AR 28. Even had he done so, the ALJ may not reject Plaintiff's pain testimony "solely for lack of objective medical evidence corroborating it." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

*Relatively Normal Daily Activities Plaintiff's Girlfriend Described*

The ALJ summarizes the third party function report from Plaintiff's girlfriend and accords it "weight to the extent it is consistent with the record as a whole." AR 28. However, the ALJ

fails to articulate how it discredit's Plaintiff's allegations, particularly the pain experienced during arthritis flare-ups which would cause Plaintiff to miss work 2-3 times per month.

A review of the record reveals that the ALJ did not provide clear and convincing reasons for discrediting Plaintiff's symptoms.

**VI. REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Given the above, the Court must decide whether this action should be remanded to the Commissioner with instructions to immediately award benefits or whether this action should be remanded for further administrative proceedings. Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin,* 759 F. 3d 995, 1021 (9th Cir. 2014). Conversely, a court should remand with an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy. *Brown-Hunter*, 806 F. 3d at 495.

In this case, the ALJ's reasoning for discrediting Plaintiff is not clearly articulated and does not support the ALJ's conclusion. The Court finds that remand for further administrative proceedings is necessary so that the credibility of Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms can be properly assessed. The ALJ shall amend his analysis of Plaintiff's credibility determination to include specific findings that include clear and convincing reasons for doing so, or shall adjust the decision to award benefits if upon further consideration the ALJ reconsiders his rejection of Plaintiff's account of his injuries. *Smolen*, 80 F.3d at 1281.

**VII. CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not free of clear legal error and supported by substantial evidence. Plaintiff's appeal is therefore GRANTED and the

case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff, Randall Gene Powers, and against Carolyn W. Colvin, the Commissioner of Social Security.

IT IS SO ORDERED.

 Dated: **June 20, 2016**               /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE